**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George S. (Joe) CORBETT,**
**Defendant-Appellant.**

**No. 83–2758**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1984.

Caesar the things that are Caesar's, and to God the things that are God's.' "

Edward T. McFarland, Lufkin, Tex., for defendant-appellant.

Bob Wortham, U.S. Atty., Beaumont, Tex., William J. Cornelius, Jr., Asst. U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

George S. (Joe) Corbett pled guilty to two counts of willfully failing to report the death of wild and free-roaming horses to the Bureau of Land Management. In this direct appeal, he complains of the Government's failure to honor portions of its plea agreement and of certain errors in the sentence imposed by the district court. For the reasons set forth below, we vacate Corbett's sentence and remand the case to the district court so that Corbett may replead to the charges against him.

I.

Appellant George S. (Joe) Corbett (Corbett) was charged in a seven-count indictment with violating various provisions of the Wild Horses and Burros Act, 16 U.S.C. §§ 1331 *et seq.*, and of conspiring to submit false and fraudulently acknowledged documents to the Bureau of Land Management (BLM) in connection with his adoption of certain federally-owned wild horses. The indictment alleged that Corbett adopted a large number of wild and free-roaming horses from the BLM and in connection therewith, along with Thomas Clemens [1] and others, submitted false information to

---

1. Clemens was charged in the same indictment, which was dismissed when Corbett pled guilty to the information. Record Vol. 2 at 9–10.

the BLM on forms fraudulently notarized by Clemens. The indictment further alleged that Corbett conspired to convert the horses that he adopted and that he wrongfully sold, mortgaged and made gifts of certain of those horses. Finally, the indictment alleged that Corbett abandoned and inhumanely treated three of the horses that were entrusted to him under the adoption program.

Pursuant to a written plea agreement, the Government agreed to dismiss the indictment and to refrain from prosecuting Corbett for any other criminal violations arising from his adoption of wild horses in December of 1981 and January of 1982. For his part, Corbett agreed to plead guilty to a two-count information charging him with willfully failing to notify the BLM within seven days of the death of two of the adopted horses. The written plea agreement was, of course, expressly conditioned on the district court's acceptance of Corbett's guilty plea to the information. In addition, the agreement specifically provides that "there is no agreement or representation made regarding the sentence to be imposed by the court...." Record Vol. 1 at 30.

On October 31, 1983, Corbett pled guilty in open court to both counts of the information. After a Rule 11 proceeding,[2] the district court accepted the plea and the indictment was dismissed. A sentencing hearing followed on December 5, 1983 at which the court imposed the following sentence:

**2.** Fed.R.Crim.P. 11. Rule 11 outlines the procedures to be followed in accepting guilty pleas in federal criminal prosecutions. Among other things, it requires that the district court address the defendant in open court and make a verbatim transcript of the proceedings. Fed.R. Crim.P. 11(c), (g).

**3.** On the same day, a written Judgment and Probation/Commitment Order was prepared and signed by the district judge. It stated the sentence as follows:

Six (6) months as to Count 1, which the defendant is required to serve and the Court imposes a fine of $2,000.00, which the defendant is required to pay. As to Count 2, the Court imposes a fine of $2,000.00 which the defendant is required to pay and the imposi-

I'm going to impose sentence on Count 1 of six months, which I'm going to require you to serve, and a fine of $2,000, and on Count 2 the imposition of sentence will be suspended; however, there'll be a $2,000 fine that will not be suspended. You'll be placed on probation for a period of five years, and the sentence on Count 2 to run consecutively to the sentence imposed on Count 1.

Record Vol. 2 at 12.[3]

Corbett thereafter filed a notice of appeal[4] and moved, pursuant to Rule 35, Fed.R.Crim.P., for reduction of his sentence. The motion was denied, but sentence was stayed pending appeal. Corbett did not, however, complain to the district court that the Government failed to honor the provisions of any plea agreement.

On appeal, Corbett asserts three grounds that he claims vitiate his conviction and sentence: (1) that his guilty plea was induced by the Government's unfulfilled promise to recommend leniency to the Probation Department during presentence investigation; (2) that the district court imposed a general sentence on multiple counts; and (3) that there is a fatal conflict between the sentence imposed in open court and the sentence reflected in the written commitment order. Corbett prays for resentencing before a different judge or for the opportunity to withdraw his guilty plea.

## II.

■ Corbett alleges that his guilty plea was induced, in part, by the promise of

tion of sentence as to imprisonment only is suspended and the defendant is placed on supervised probation for a period of Five (5) years, and said sentence to run consecutive to the sentence imposed on Count 1.

Record Vol. 1 at 27.

**4.** Corbett's Notice of Appeal was not filed within ten days of judgment as prescribed by Fed.R. App.P. 4(b). When the appeal reached us, we remanded the case to the district court to determine if Corbett's failure to file within ten days was the result of excusable neglect, 735 F.2d 1361. The district court so found and the appeal is now properly before us. Supp. Record at 5.

Assistant United States Attorney William J. Cornelius to "write a letter to the Probation Department during Pre-Sentence Investigation recommending probation for Appellant [Corbett]." [5] Appellant's Brief at 9. He alleges that the letter was never written or, if it was, that it is not contained in the presentence investigation report submitted to the district court. Corbett seeks specific performance of the promise and resentencing before a different judge or, in the alternative, a chance to withdraw his guilty plea.

The Government denies that it promised to send a letter to the probation office recommending probation for Corbett. Appellee's Brief at 3. [6] The alleged promise is not mentioned in the written plea agreement. In fact, the agreement, which is signed by the United States Attorney, Corbett and two attorneys for Corbett, provides that "it is expressly agreed and understood that there is no agreement or representations made regarding the sentence to be imposed by the Court, inasmuch as that is a matter which is exclusively the province of this Court." Record Vol. 1 at 30. At the Rule 11 hearing, Corbett testified under oath that he had not been induced or persuaded into pleading guilty and that he was not promised leniency in exchange for his plea. [7] Although Corbett moved below for reduction of his sentence, he did not raise the issue of the Government's alleged failure to honor its promise to recommend probation. We are left, then, with Corbett's uncorroborated assertion that the Government committed itself to write a letter to the Probation Office, an assertion that is denied by the Government, refuted by the written plea agreement and arguably contradicted by Corbett's sworn testimony at the Rule 11 hearing. [8] With absolutely no factual predicate in the record, Corbett asks us, on the strength of his naked allegation of an unfulfilled prosecutorial promise, to grant him resentencing before a new judge or an opportunity to withdraw his guilty plea.

**5.** Corbett alleges in his brief that he originally reached an agreement with the Government which called for dismissal of the indictment and a guaranteed sentence of two years of probation and a $2,000 fine on two counts of failing to report the death of wild horses. He claims that the Government thereafter informed him that the original agreement could not be honored and that the Government would not make any sentence recommendations to the district court. Instead, Corbett asserts, he was offered the bargain reflected in the written plea agreement filed with the district court. He maintains, however, that he was "enticed" into accepting the written agreement by Cornelius' commitment to write a letter to the probation office recommending probation. Appellant's Brief at 4–5.

**6.** The Government does acknowledge, however, that

[prior] to the plea agreement being reached, Counsel for the Government did generally state to Counsel for Defendant that the most he could do in connection with a guilty plea in District Court would be to write a letter to the District Court and/or Probation Office. The writing of a letter was never again mentioned or discussed by the parties or their attorneys.

Appellee's Brief at 3–4.

**7.** We note that Corbett was not asked directly, as required by Fed.R.Crim.P. 11(d), whether the plea was the result of "promises apart from a plea agreement." The court did engage in the following colloquy with Corbett:

THE COURT: Has anyone promised you or induced you to enter the plea of guilty by leading you to believe that the Court might be more lenient on you, should you enter a plea of guilty?

CORBETT: No, sir.

THE COURT: Has anyone persuaded you or induced you to enter the plea of guilty?

CORBETT: No, sir.

Record Vol. 2 at 6. In light of these questions, we do not find the failure to ask of other promises in Rule 11's precise language to be material. *See Barrientos v. United States,* 668 F.2d 838, 841 n. 2 (5th Cir.1982) ("While the district judge may not have expressly inquired into the existence of other promises, her inquiry was adequately detailed and revealed the voluntariness of the plea.").

**8.** *See* note 7, *supra.* Corbett does not even unequivocally aver that the Government did not, in fact, send the letter to the probation office. Rather, he alleges that *either* the government did not send the letter *or* the letter was omitted from the pre-sentence report. Appellant's Brief at 5. However, since the Government does not assert that it sent the letter, we assume for purposes of this appeal that it did not.

Corbett relies on *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), for the proposition that "when a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499. We do not doubt the truth of that statement of the law.[9] It is, however, irrelevant to this case in its present posture. *Santobello* was decided on certiorari from a state court decision affirming a conviction based on a negotiated guilty plea. Petitioner complained of the prosecution's failure to honor its agreement to make no recommendation as to the sentence to be imposed. All parties agreed that the prosecution had in fact made the promise and had failed to honor it. *Id.* at 259, 92 S.Ct. at 497. *Santobello*, therefore, does not help us in deciding a case where the existence of a prosecutorial promise is disputed and is raised for the first time on direct appeal. Unlike the Court in *Santobello*, we are faced with a swearing match between briefs as to the very existence of the promise that the Government is accused of breaching.

■ Corbett's uncorroborated allegations do not warrant the relief he seeks.

We must review the propriety of the plea against the only record before us: the Rule 11 transcript and the written plea agreement.[10] The record contains no evidence of a subsidiary Government promise to write a letter to the probation office. In fact, Corbett's testimony at the Rule 11 proceeding, together with the written plea agreement, negates the existence of any such promise. By accepting Corbett's guilty plea, the district court implicitly found that the plea was not induced by promises other than those contained in the written plea agreement. *United States v. Dayton*, 604 F.2d 931, 940 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980) (acceptance of plea is viewed as affirmative finding that Rule 11's post-*McCarthy* requirements are satisfied; reviewed under clearly erroneous standard). On the record before us, we cannot characterize that finding as clearly erroneous. *See United States v. Ammirato*, 670 F.2d 552, 555 (5th Cir.1982) (no relief for unkept prosecutorial promise where claim was not supported by record). We do not hold that one who has pled guilty may never contradict the record and, after the Rule 11 hearing, assert the existence of a previously undisclosed prosecutorial promise. We simply hold that, having

9. On an appropriate showing of an unkept plea agreement, Corbett might well be entitled to specific performance of the agreement and re-sentencing before a different judge or a chance to withdraw his plea. *See, e.g., United States v. Block*, 660 F.2d 1086, 1091 (5th Cir.1981), *cert. denied*, 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982) ("Where the Government fails to abide by the terms of a plea agreement, a court has the authority to order specific performance."); *United States v. Shanahan*, 574 F.2d 1228, 1231 (5th Cir.1978) (unfulfilled prosecutorial promise; "[W]e have no alternative but to grant the relief requested by the defendant and remand the case to the district court for resentencing before a different judge.").

10. On direct appeal of a conviction based upon a plea, "complaints based on facts outside the record are not before and will not be considered by the reviewing court." *United States v. Hay*, 685 F.2d 919, 921 (5th Cir.1982) (allegation of unfulfilled prosecutorial promise not reached

on direct appeal because not raised below and no basis in record to determine if agreement actually performed). As we recognized in *United States v. Coronado*, 554 F.2d 166 (5th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

reasonable appellate practice calls for determining only whether the district court acted properly in accepting the plea and imposing sentence on the basis of the record and contentions then before it.

*Id.* at 170, 175 (declining to grant relief on claim that guilty plea was coerced by, among other things, unfulfilled prosecutorial promise; "[O]n direct appeal where there has been no motion to withdraw the plea or other presentment of the issue to the district court, we review only the adequacy of the record to support the acceptance of the plea."). Therefore, since the factual basis of Corbett's claim, if any, is not part of the proceedings below, we are not in a position to contradict the record and decide the existence or breach of a promise.

failed to raise the issue below, Corbett may not do so on direct appeal with uncorroborated allegations.[11]

### III.

Although we decline to grant relief on Corbett's unkept plea bargain claim, we must address a fundamental error that appears on the face of the proceedings below.[12] The record reveals an entire failure to address one of Rule 11's core concerns. We must, therefore, vacate Corbett's conviction and allow him to replead to the charges against him.

■■■ Rule 11 contains a long list of substantive requirements and procedural safeguards that must be observed before a guilty plea is accepted. It is clear, however, that we do not demand "letter-perfect compliance" with each of the rule's many requirements. *Dayton,* 604 F.2d at 939. *See also* Fed.R.Crim.P. 11(h) advisory committee note (1983) (Rule 11 "is not to be read as requiring a litany or other ritual which can be carried out only by word-for-word adherence to a set 'script.' "). In *Dayton,* we recognized that Rule 11 has three core concerns: (1) a guilty plea must be free from coercion; (2) the accused must understand the nature of the charges against him; and (3) the accused must know the direct consequences of his guilty plea.[13] An entire failure to address one of these core concerns requires automatic reversal. Lesser violations of Rule 11 are evaluated under the harmless error standard of review.[14] *Dayton,* 604 F.2d at 939–40.

**11.** Since Corbett failed to raise the issue in a Rule 32(d) Motion to Withdraw his plea, the remaining vehicle for raising his claim is a motion to the district court under 28 U.S.C. § 2255. Fed.R.Crim.P. 32(d) (after sentencing or suspension of sentence, "a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255"). Our inability to afford relief on direct appeal will not prejudice Corbett's right to urge a § 2255 motion. *See, e.g., Coronado,* 554 F.2d at 175 ("We [affirm the conviction] without prejudice to Coronado's right to argue to the district court in a proper proceeding that the facts entitle him to relief ...."). We, of course, do not address whether Corbett would be entitled to relief or even to an evidentiary hearing in the district court. *See, e.g., United States v. McCord,* 618 F.2d 389, 393 (5th Cir.1980) (§ 2255 petitioner alleging unkept plea agreement in contradiction of sworn testimony at Rule 11 proceeding not entitled to evidentiary hearing on uncorroborated allegations; must raise "substantial inference" of broken agreement through affidavits or otherwise); *Barnes v. United States,* 579 F.2d 364, 366 (5th Cir.1978) ("a [§ 2255] petitioner asserting the existence of a bargain outside the record and contrary to his sworn statements under oath bears a heavy burden").

**12.** Corbett does not specifically raise the district court's failure to comply with Rule 11. Because he challenges his guilty plea, however, we must review the adequacy of the plea based upon the Rule 11 transcript. Our review of the Rule 11 transcript refutes Corbett's specific claim of an unkept plea agreement but reveals plain error which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Adams,* 634 F.2d 830, 836 (5th Cir.1981) (*sua sponte* review of violation of Rule 11(e)(1)). *See also* Rule 52(b), Fed.R.Crim.P.

We are not to be understood as holding that every appeal from a conviction based upon a plea necessitates a *sua sponte,* plenary review for technical compliance with Rule 11. We hold only that where, as here, appellant challenges the validity of his plea and seeks to withdraw it, we should review the adequacy of the plea based on the Rule 11 transcript. In so doing, we may independently notice violations of Rule 11 core concerns that plainly appear from the face of the record. *See, e.g., United States v. Hay,* 685 F.2d at 921 (appellant failed to attack plea proceedings, but claimed unkept plea agreement; "appeal ... required determination of whether, on the basis of the Rule 11 transcript record, the defendant's plea was entered with knowing voluntariness and in compliance with Rule 11."); *United States v. Mims,* 440 F.2d 643, 644 (8th Cir.1971) (direct appeal alleging involuntariness; independent review of Rule 11 proceeding); *United States v. Briscoe,* 428 F.2d 954, 957 (8th Cir.), *cert. denied,* 400 U.S. 966, 91 S.Ct. 378, 27 L.Ed.2d 386 (1970) ("Even though not presented to the trial court [nor specifically raised on appeal] it is nevertheless incumbent on this court to review the guilty plea proceeding as to its compliance with Fed.R. Crim.P. 11 ....").

**13.** These core concerns formed the essence of Rule 11 as it existed at the time of the Court's decision in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

**14.** In other words, non-compliance with the post-*McCarthy* requirements of Rule 11 and "inadequate addresses" of the core concerns that do not rise to the level of "entire failures" do not require automatic reversal. *Dayton,* 604 F.2d at 939–40; *United States v. Punch,* 709 F.2d 889, 895–96 (5th Cir.1983). We have not been faced

■ Our review of the Rule 11 proceeding reveals an imperfect inquiry into Corbett's understanding of the nature of the charges against him. Because Corbett's understanding of the charges is a Rule 11 core concern, we must determine if there has been an entire failure to address this issue. To that end, we have reproduced the relevant portions of the Rule 11 transcript:

> THE COURT: All right, you heard what the Government said, that you want to change your plea and plead to an information; is that correct?
>
> CORBETT: Yes, sir.
>
> \* \* \* \* \* \*
>
> THE COURT: All right, Mr. Corbett, how do you plead to Count 1 of the information?
>
> CORBETT: Guilty, sir.
>
> THE COURT: How do you plead to Count 2?
>
> CORBETT: Guilty, sir.
>
> \* \* \* \* \* \*
>
> THE COURT: Do you fully understand the charges against you?
>
> CORBETT: Yes, sir.
>
> \* \* \* \* \* \*

> THE COURT: Have you had sufficient time to discuss with your attorney any possible defense you may have to the charge?
>
> CORBETT: Yes, sir.
>
> \* \* \* \* \* \*
>
> THE COURT (to Counsel for Corbett): Counsel, are you satisfied the Defendant is entering the guilty plea voluntarily with an understanding of the nature of the charges, as well as the consequences of his plea?
>
> MR. McFARLAND (Counsel for Corbett): Yes, your honor.

Record Vol. 2 at 4–8.

After this colloquy, the unreproduced portions of which comply in the main with Rule 11, the Government presented a factual basis for the guilty plea. The Government asked Corbett one question for each of the two counts of the information. The questions substantially paralleled the language of the information and elicited admissions to all elements of the crime.[15] The district court then accepted Corbett's guilty plea: "The court finds your plea is knowledgeable, voluntary and has a basis in fact and contains all the elements of the

with application of the harmless error standard to Rule 11 violations since harmless error language was added to the rule for the first time effective August 1, 1983. *See* Fed.R.Crim.P. 11(h) ("Harmless Error. Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."). We are convinced, however, that the addition of section (h) comports with our prior practice. *See* Fed.R.Crim.P. 11(h) advisory committee note (1983) ("Indeed, it is fair to say that the kinds of Rule 11 violations which might be found to constitute harmless error upon direct appeal are fairly limited, as in such instances the matter "must be resolved solely on the basis of the Rule 11 transcript" and the other portions of the limited record made in such cases (citing *Coronado,* 554 F.2d at 166). Illustrative are: where the judge's compliance with subdivision (c)(1) was not absolutely complete, in that some essential element of the crime was not mentioned, *but the defendant's responses clearly indicate his awareness of that element....*") (emphasis added). Clearly, Rule 11(h), as applied to core concerns, is designed to forgive "inadequate addresses," not "entire failures."

15. As to count one, the information and the Government's question read as follows:

> *The Information*
>
> On or about November 15, 1982, within the Eastern District of Texas, near Pittsburg, Camp County, Texas, Defendant, having previously obtained custody of a group of wild and free-roaming horses from the Bureau of Land Management, pursuant to applicable adoption procedures, wilfully failed to notify representatives of the Bureau of Land Management of the death of a wild and free-roaming horse, identified by ear tag number 1760, within seven (7) days of the death of said horse, all in violation of 43 CFR § 4760.2, part J.
>
> *The Question*
>
> Mr. Corbett, is it true that on or about November the 15th of 1982, near Pittsburg, Texas within the Eastern District of Texas, you willfully failed to notify representatives of the Bureau of Land Management of the death of a wild and free-roaming horse identified by ear tag number 1760?

Record Vol. 2 at 31; Vol. 3 at 8. With respect to count two, the information and question are nearly identical, except for the substitution of a different identification number.

crime, and is, therefore, accepted." Record Vol. 2 at 8.

The information was not read to Corbett at the Rule 11 hearing. Nor did the court inquire whether Corbett had been provided with a copy of it. By responding affirmatively to the Government's questions, Corbett admitted all of the elements of both counts of the crime with which he was charged. Corbett was never informed, however, that the questions contained the elements of the crime. In fact, no attempt was ever made at the Rule 11 hearing to inform Corbett of the elements of the crime.[16]

Our decisions establish that the requisite depth of inquiry into the accused's understanding of the nature of the charges against him varies with the complexity of the charges and the sophistication of the accused. As we said in *Dayton*, 604 F.2d at 938:

> For simple charges such as those in this case, a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself.

■ Our decisions also establish that, at a bare minimum, the charging instrument must be read to the accused or he must otherwise be furnished the same information that would be imparted to him if he heard the charging instrument read aloud.

A naked inquiry into whether the accused understands the charges against him, unaccompanied by a reading or explanation of those charges, will not suffice. Where the only examination of the accused's understanding of the charges is such a naked inquiry, there has been an entire failure to address a core concern. As we said in *Punch*, 709 F.2d at 896:

> Where defendant is not informed of one of the elements of the charge against him, there has been an "entire failure" to address a core concern. As used in *Dayton*, the term "entire failure" does not mean failure to make any mention of the charge whatsoever. It is difficult, if not impossible, to conceive of a Rule 11 proceeding in which a defendant could plead guilty to an unnamed charge. Rather, in a non-complex case, a court fails entirely to personally inform the defendant of the nature of the charges against him when it fails to comply with the requirement that the defendant be read the indictment, or otherwise fails to furnish the defendant the same information he would obtain by hearing the indictment read.

*See also United States v. Patterson*, 739 F.2d 191 (5th Cir.1984) ("judge's reliance on testimony of [the accused] and his attorney, rather than personally reading, inquiring or explaining, and satisfying himself of the defendant's appreciation of the nature of the charges, would constitute an 'entire failure to address a core concern' "). Thus, even assuming that the charges here are of the simplest nature and that Corbett is a highly sophisticated defendant, there has been an entire failure to address a core concern. The case must therefore be remanded so that Corbett can plead anew.

## IV.

Because we remand for repleading, we need not address Corbett's attack on the sentence imposed by the district court.

---

**16.** We of course have no way of knowing if Corbett in fact knew the elements of the crime with which he was charged. We do not doubt the good faith of all concerned in the proceeding below and we note that, for the most part, Rule 11 was strictly complied with. However, it is essential, at a minimum, that the Rule 11 transcript demonstrate that the charging instrument has been read to the accused or that he has been otherwise informed of the elements of the crime. Only then can one of the rule's core concerns be adequately protected.

Accordingly, we REVERSE the conviction, VACATE the plea of guilty and REMAND with instructions that Corbett be permitted to plead anew.