**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Mario BERNAL, Defendant–Appellant.**

No. 87–1930.

United States Court of Appeals,
Fifth Circuit.

Nov. 25, 1988.

G. Luke Ashley, Dallas, Tex., Court appointed, for defendant-appellant.

Mario A. Bernal, Tucson, Ariz., pro se.

Andrew Levchuk, Dept. of Justice Criminal Div., Appellate Section, Washington,

D.C., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellant Mario Bernal appeals his conviction for distributing cocaine in violation of 21 U.S.C. § 841(a)(1) (1970),[1] to which he pleaded guilty, on grounds that the district court failed to comply with Fed.R.Crim.P. 11 (Rule 11). We reverse and remand.

## I.

Appellant was indicted on four counts of narcotics violations, including one count of conspiracy to distribute cocaine and three counts of cocaine distribution. In late August 1984, Bernal pleaded not guilty to these charges. But at a rearraignment hearing in October, Bernal entered into a written plea agreement with the government in which he agreed to enter a plea of guilty to one count of cocaine distribution. The district court conducted a Rule 11 proceeding and accepted Bernal's guilty plea. In November, the district court sentenced Bernal to twelve years imprisonment, to be followed by four years of supervised release.

After receiving his sentence, Bernal appealed to this court, seeking reversal of his conviction on grounds that the district court did not advise him of the nature of the charges as required by Rule 11(c)(1). This failure, he contends, is fatal to his plea.[2]

Bernal, in the presence of counsel, waived a reading of the indictment near the beginning of his Rule 11 hearing.[3] The district court also asked Bernal if he wanted to read the plea agreement which contained the elements of the charged offense. Except for these two exchanges, the district court had no other oral exchange with Bernal concerning the nature of the charges to which Bernal sought to plead guilty. The district judge did, however, have a combined "plea agreement/factual resume" signed by Bernal and his counsel. This instrument recited the elements of the offenses and the facts relied upon by the government to support the plea. Bernal waived the reading of this instrument, agreed that the factual resume was correct and that he committed the elements of the offenses charged. The district judge verified that Bernal signed this document and permitted him to correct errors in it; however, the district court had no discussion with Bernal about the contents of the document. The question in this appeal narrows to whether the court's failure to have any on-the-record discussion with Bernal about the nature of the charges requires us to reverse this conviction.

1.  (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

2.  Because of our disposition of this appeal, we need not consider Bernal's additional arguments that he was sentenced to an illegal term of supervised release and the district judge failed to make written findings concerning its ruling on a disputed portion of Bernal's presentence report.

3.  The following colloquy appears in the transcript of the defendant's rearraignment hearing:
    COURT: Mr. Bernal, have you been provided with a copy of the indictment?
    DEFENDANT: Yes.

COURT: Have you had enough time to go over it with your attorney?
DEFENDANT: Yes, Your Honor.
COURT: Do you desire that the indictment be read aloud to you in open court? You have that right, however, you may also give that right up.
DEFENDANT: No. No, Your Honor.
COURT: All right. By "no," you mean you give up that right?
DEFENDANT: Yes. I don't want it read.
COURT: I am informed that you desire to plead guilty to count 4 of the indictment. Is that correct?
DEFENDANT: That's correct.

## II.

"Rule 11 creates a prophylactic scheme designed to insure both that guilty pleas are constitutionally made and that a full record will be available in the event that a challenge is made to the plea." *United States v. Adams*, 634 F.2d 830, 837 (5th Cir.1981); *United States v. Guichard*, 779 F.2d 1139, 1141 (5th Cir.), *cert. denied*, 475 U.S. 1127, 106 S.Ct. 1654, 90 L.Ed.2d 197 (1986). Rule 11 details both procedural and substantive requirements that must be met before a district court may accept a guilty plea. *Guichard*, 779 F.2d at 1141.

In *United States v. Dayton*, 604 F.2d 931 (5th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980), we held *en banc* that a failure by the district court to address Rule 11's core concerns required automatic reversal. These core concerns are: Was the plea coerced? Does the accused understand the nature of the charges? And does the accused understand the consequences of the plea? In appeals predicated on a failure to comply with Rule 11—other than a failure to address the core concerns—we apply a harmless error analysis. *See also United States v. Corbett*, 742 F.2d 173, 179 n. 14 (5th Cir.1984). We concluded that reversal was required only when there is an "entire failure" to address one of the three core concerns. But we determined that if the core concerns are met, an "inadequate address" or less than "letter perfect" compliance with Rule 11 may be excused under a harmless error analysis. *United States v. Dayton*, 604 F.2d at 939–40.[4]

The government contends that the addition of Rule 11(h) in 1983 excuses the district court's failure to advise Bernal of the nature of the charges when that omission is examined under a harmless error analysis. Section (h) provides: "any variance from the procedure required by this rule which does not affect substantive rights shall be disregarded."

*United States v. Corbett*, 742 F.2d at 179 n. 14, decided shortly after section (h) was added to Rule 11, answers the government's argument. In that case we stated "[w]e are convinced . . . that the addition of section (h) comports with our prior practice." *Id.* "Clearly, Rule 11(h), as applied to core concerns, is designed to forgive 'inadequate addresses,' not 'entire failures.'" *Id.*

Other circuits have interpreted the effect of subsection (h) differently. The Third and Sixth Circuits have held that Rule 11(h) makes applicable to direct appeals the substantial compliance standard of *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). *United States v. de le Puente*, 755 F.2d 313, 315 (3d Cir.1985); *United States v. Stead*, 746 F.2d 355, 356–57 (6th Cir.1984). Under *Timmreck*, which until enactment of subsection (h) had governed only those Rule 11 claims brought by way of collateral attack, a guilty plea will be affirmed so long as there was substantial compliance with the rule. On the other hand, the Eleventh Circuit has applied our *Corbett* rule to a Rule 11 claim raised collaterally, while suggesting that a more searching standard of review might apply to direct appeals. *Lilly v. United States*, 792 F.2d 1541, 1545 (11th Cir.1986). Finally, two circuits, the Seventh and Tenth, have cited both to our *Corbett* rule and to the *Timmreck* rule of the Third and Sixth Circuits, without distinguishing between them. *United States v. Lovett*, 844 F.2d 487, 492 (7th Cir.1988); *United States v. Theron*, 849 F.2d 477, 480–81 & n. 4 (10th Cir.1988) (also citing the Eleventh Circuit's *Lilly* decision).

We note these varying interpretations of Rule 11 only to avoid further confusion in this area. They have no effect upon our decision here. The *Corbett* rule is sound, and it is also binding upon this circuit. It controls our disposition of Bernal's appeal.

## III.

The district court in this case did not read the indictment or advise the de-

---

**4.** But see the dissent in *Dayton* which points out that most, if not all, of the other circuits required strict compliance with Rule 11. *United*

*States v. Dayton*, 604 F.2d at 948 n. 2 (dissenting opinion).

fendant on the record of the nature of the charges to which he sought to plead guilty. This violates the core concern provided by Rule 11(c)(1) which provides:

> (c) Advice to defendant. Before accepting a plea of guilty or nolo contendre, the court must address the defendant personally in open court and inform him of, and determine that he understands ... the nature of the charge to which the plea is offered, ...

As stated above, the addition of Rule 11(h) did not require a change in our existing practice in reviewing alleged failures to comply with Rule 11. In *Dayton*, we described in some detail what would satisfy the core concerns addressed by Rule 11(c):

> As for the first clause of the first requirement—that the judge personally inform the defendant of the nature of the charge and determine that he understands it—we are unable to state a simple or mechanical rule but offer some general observation that we hope will be helpful. For simple charges such as those in this case, a reading of the indictment, followed by an opportunity given the defendant to ask questions about it will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself. We can do no more than commit these matters to the good judgment of the court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.

604 F.2d at 937–38; *see also United States v. Punch*, 709 F.2d 889 (5th Cir.1983).

If the district court had read the indictment to Bernal in open court or directed the Assistant United States Attorney to do so, and then given the defendant an opportunity to ask questions about the charges, this would have been sufficient. This does *not* mean, however, that reading the indictment is the only way the judge can satisfy his obligation to advise the accused of the nature of the charges. As we stated in *United States v. Punch*, 709 F.2d at 894 n. 6, "[w]here a judge instead explains all the elements of the offense to the defendant, furnishing him with at least as complete an understanding of the charges as he would obtain from hearing the indictment read, the indictment need not be read as well." As in *Punch*, neither of these procedures was followed in this case. In the exchange between the district court and Bernal, there was not even a cursory reference to the type of offense or the nature of the charges to which Bernal sought to enter a plea.

The government contends that the combined written plea agreement and statement of factual findings which Bernal signed was sufficient to satisfy the judge that Bernal was aware of the nature of the charges pending against him. But more than this is required for the district court to establish on the record the defendant's understanding of the charges. Even if the defendant purports to silently read the plea agreement in the presence of the court, this is not enough to satisfy the core concern of Rule 11 that the district court personally advise the criminal defendant of the nature of the charge. We cannot assume that all criminal defendants can read English sufficiently to understand the nature of the charge. As we stated in *Dayton*:

> What is necessary is that the trial court, given the nature of the charges and the character and capacities of the defendant, *personally participate* in the colloquy mandated by Rule 11 and satisfy himself fully that, within those limits, the defendant understands what he is admitting and what the consequences of that admission may be, as well as *that what he is admitting constitutes the crime charged,* and that his admission is voluntarily made (emphasis added).

604 F.2d at 943. *See also United States v. Punch*, 709 F.2d at 894 n. 7.

Satisfaction of the core concerns should be established on a verbatim record:

438

Finally, a verbatim record of the proceedings must be made, both to preserve them against possible future assertions at variance with them and as a basis for prosecution of untruthful swearing, as well as in order that review of them may be had if desired. In its *McCarthy* opinion, the Court laid great stress on the prophylactic value of such a record:

[T]he Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination ...

[T]he more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

*Dayton*, 604 F.2d at 938–39, quoting *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1965) (footnote omitted).

The wisdom of *McCarthy*'s policy requiring a verbatim record to reflect satisfaction of Rule 11's core concern, is apparent. Reliance on a signed statement, or on a statement which the defendant purports to read to himself in the presence of the district court, to establish that the accused understands the nature of the charges opens the door to later claims by the accused that he did not read or understand what he signed. A remand and further hearings may then be necessary to resolve this contention. If the district court personally addresses the defendant on the record and satisfies himself of the defendant's understanding of the charges, such claims are discouraged and any such claims that are made can be reviewed promptly without additional hearings.

The district court's complete failure to address a core concern of Rule 11 requires reversal. Accordingly, the defendant's conviction is reversed and the case is remanded to the district court to permit defendant to plead anew or for other proceedings consistent with this opinion.

REVERSED AND REMANDED.