**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 91-1832

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MICHAEL A. HEKIMAIN,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

(October 9, 1992)

Before GOLDBERG, JONES, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

I.

The indictment in this case charged that On December 7, 1990, Michael A. Hekimain was found to possess stolen mail and articles contained therein: namely, a credit card issued in the name of Homer C. Schmidt, in violation of 18 U.S.C. §1708. The credit card was part of the contents of a letter addressed to Homer C. and Diana L. Schmidt, 6905 Colfax Drive, Dallas, Texas, which had been stolen from the mail by Timothy Alan Farris, a United States Postal Service employee. Hekimain received this card from an associate of

his and Farris' who also received credit cards which were stolen from the mail by Farris. Hekimain knew that Farris would steal mail, remove credit cards and then sell them. Knowing that the credit card had been stolen from the mail, Hekimain used this credit card several times, including on December 7, 1990, at the Dallas Gentlemen's club in Dallas, Texas, to purchase products and services. The Presentence Report (PSR) determined that the total loss attributable to Hekimain was $4,446.76. In exchange for the government's commitment to forego further prosecution for activities which occurred or arose out of his participation in other crimes charged in the indictment, Hekimain agreed to plead guilty to the § 1708 violation.

The district court accepted Hekimain's plea of guilty. The PSR determined that the Guidelines range for imprisonment was 9 to 15 months, followed by a supervised release range of 2 to 3 years. Explaining that "[t]he defendant has one of the longest criminal history records the court has ever seen" and "an extensive history of credit card abuse", the district court opted to make an upward departure from the Guidelines range for imprisonment and sentenced him to five years in prison followed by a supervised release term of three years. The term of imprisonment imposed was four times the maximum Guidelines range and was the maximum period authorized for a violation of 18 U.S.C. § 1708.

Hekimain was also ordered to pay the special assessment of $50.00 and restitution in the amount of $3,696.76. The fine was waived because of Hekimain's inability to pay.

Hekimain filed notice of appeal on the following grounds:

A.   The final judgment adjudging him guilty of an offense under 18 U.S.C. § 1708 was invalid because:

1.   The district court failed to personally explain the maximum penalty to Hekimain, relying on the prosecutor to perform the task.

2.   The district court failed to explain the effect of the three-year supervised release term during the course of the plea colloquy.

3.   The district court failed to apprise Hekimain during the plea colloquy of its power to effect an upward departure from the applicable Guidelines sentencing range.

B.   The sentence imposed by the district court was unwarranted because:

1.   The district court failed to provide acceptable reasons for effecting an upward departure from the Guidelines sentencing range applicable to Hekimain.

2.   The district court failed to inform Hekimain of the ground upon which it based its decision to make an upward departure.

3.   The district court failed to provide reasons supporting the magnitude of the upward departure.

4.   The district court's upward departure was not reasonable in length.

Because we reverse the conviction based upon the court's noncompliance with the requirements of Federal Rule of Criminal

Procedure 11(c)(1), we do not reach the issues on sentencing set forth in part B above.

II.

Hekimain argues that his guilty plea is invalid and his conviction must be reversed because the district court failed to comply with the requirements of Fed. R. Crim. P. 11(c)(1). Rule 11 reads, in pertinent part, as follows:

> (c) Advice to Defendant.  Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the Defendant understands, the following:
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, <u>including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances</u> . . . (emphasis added).

This circuit has identified three "core concerns" under Rule 11: (1) whether the guilty plea was coerced; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of the plea. <u>See United States v. Shacklett</u>, 921 F.2d 580, 582 (5th Cir. 1991); <u>United States v. Bernal</u>, 861 F.2d 434, 436 (5th Cir. 1988).  When a district court completely fails to address one of these concerns, the defendant's substantial rights have been affected and Rule 11 requires automatic reversal, <u>Bernal</u>, 861 F.2d at 436; <u>United States v. Corbett</u>, 742 F.2d 173, 178 (5th Cir. 1984).  If the core concerns are met, however, an "inadequate address" or less than "letter-perfect" compliance with Rule 11 may be excused under a

4

harmless error standard.  <u>Bernal</u>, 861 F.2d at 436; <u>see also</u> <u>United States v. Dayton</u>, 604 F.2d 931, 939-40 (5th Cir. 1979) (en banc), <u>cert. denied,</u> 445 U.S. 904, 100 S. Ct. 1080, 63 L.Ed. 2d 320 (1980).

A.  <u>DISTRICT COURTS FAILURE TO INFORM HEKIMAIN PERSONALLY OF THE MAXIMUM PENALTY FOR THE OFFENSE.</u>

Hekimain first contends that the court failed to advise him personally of the statutory maximum penalty for a violation of 18 U.S.C. § 1708.  At the plea hearing, the Assistant United States Attorney (AUSA) read the indictment and undertook to state the penalties.  The AUSA stated that a violation of 18 U.S.C. § 1708 was punishable by a term of imprisonment not to exceed five years, to be followed by a term of supervised release of no more than three years; and that, if the term of supervised release is violated, the defendant can be imprisoned "for the remainder of the term."  Hekimain's attorney indicated in response to the court's questioning that he had discussed the maximum penalties involved with his client and that the government had correctly described the penalties.  The court asked Hekimain if he understood the maximum penalties involved and Hekimain responded affirmatively.  Hekimain did not have any questions about the penalties.

Rule 11 (c) (1) states that the court must address the defendant <u>personally</u> in open court and inform the defendant of and determine that the defendant understands the maximum possible penalty, including the effect of any supervised release term.  In <u>United States v. Clark</u>, 574 F.2d 1357 (5th Cir. 1978), and <u>United</u>

States v. Crook, 526 F.2d 708 (5th Cir. 1976), both cited by Hekimain, the Court reversed where the prosecutor, not the judge, described the maximum possible penalties. However, in later cases, this Court has not applied Rule 11's requirement that the court personally address the defendant so rigidly. E.g., United States v. Dayton, 604 F.2d 931 at 938 (judge need not be "sole orator or lector," but must only involve himself personally in the inquiry); United States v. Sanchez, 650 F.2d 745, 748 (5th Cir. 1981) (prosecutor's reading of indictment and the opportunity later given by the district court for the defendant to ask questions sufficient); Bernal, 861 F.2d 434 at 437.

Hekimain argues that the latter cases involved the district court's failure to inform the defendant of the nature of the charges, not its failure to inform of the maximum penalties. The distinction, however, is not persuasive.

We see no reason why the reasoning of the above cited cases should not apply to Rule 11's requirement that a defendant be informed of the maximum penalties for an offense as well. Dayton 604 F.2d at 938. In the instant case, while it was the AUSA who announced in court the maximum sentence which Hekimain faced upon his conviction for a violation of 18 U.S.C. § 1708, as well as the maximum term of supervised release, the maximum amount of fine, the amount of the mandatory assessment, and that Hekimain could be ordered to pay full restitution, the court then asked counsel for Hekimain whether he had discussed the maximum penalties with his client. After receiving an affirmative answer, the court asked

6

Hekimain whether he understood the maximum penalties involved. Hekimain replied that he did. Moreover, the court specifically asked Hekimain if he had any questions about the charges or the penalties. We hold therefore that the prosecutor's statements, along with the court's follow up questions, adequately satisfied the requirements of Rule 11(c) that the trial court advise Hekimain of the maximum penalty. <u>Dayton</u>, 604 F.2d at 938.

B. <u>DISTRICT COURT'S FAILURE TO PROVIDE AN EXPLANATION OF THE EFFECT OF SUPERVISORY RELEASE.</u>

Hekimain next argues that Rule 11 was violated by the district court's failure to provide an explanation of the effect of a term of supervisory release, i.e., the prosecutor incorrectly stated the effects of supervised release in the event that Hekimain should violate a condition of supervised release. The prosecutor stated to Hekimain during the plea colloquy that his imprisonment would be followed by a term of supervised release and that if the term of supervised release was violated, Hekimain <u>could be imprisoned for the remainder of the term</u>. We agree that the underlined portion of this statement was not correct. Hekimain could potentially be imprisoned again for a two year term, without credit for any time already served under supervised release. 18 U.S.C. § 3583(e).

There do not appear to be any reported cases in this Circuit involving an incorrect explanation of the effect of violation of supervised release and such error's effect on the validity of a guilty plea. This Court has addressed the total lack of explanation of the possibility and effects of supervised release in

7

United States v. Bachynsky, 934 F.2d 1349 (5th Cir.) (en banc), cert. denied, _____ U.S. _____ 112 S. Ct. 402, 116 L. Ed. 2d 351 (1991). The district court in that case advised the defendant of the statutory maximum penalty but did not advise him that the sentence would include a period of supervised release or explain its effects. Id. at 1353. However, Bachynsky was sentenced to 121 months imprisonment and three years supervised release; and the maximum penalty fixed by statute was 25 years imprisonment. Even in a "worst case" scenario, the total period of time which would elapse from Bachynsky's first day in prison to his last would have been 18 years and one month.[1]

This Court went on to hold in Bachynsky that because the court had informed the defendant of the statutory maximum and because the aggregate maximum period of incarceration, under the actual sentence of imprisonment and supervised release, cannot exceed the statutory maximum, the failure of the court to mention supervised

---

[1] Even under that "worst case" hypothesis, the total period of elapsed time between his first day in prison and his last would be eighteen years and one month--twenty-three months short of the twenty years' maximum for Part A of Count 1 alone , and six years and eleven months short of the twenty-five years' *consecutive* statutory maximum--twenty years for Part A of Count 1 plus five years for Count 87. That is so because, despite the theoretically possible extension of his supervised release term from three to five years pursuant to 18 U.S.C. § 3583(d)(2), in actuality Dr. Bachynsky could only be returned to prison for three years following revocation of supervised release rather than five years, because at the time of his sentencing, RICO was a Class B felony under 18 U.S.C. § 3559, and three years is the maximum period of incarceration for which a Class B felon may be returned to prison if his supervised release should ever be revoked. *See* 18 U.S.C.§ 3583(e)(3). For Count 87, a Class C felony, there is a limit of two years' additional incarceration following revocation of supervised release. But prison terms following revocation of supervised release are served concurrently, so three years is the maximum revocation term to which Dr. Bachynsky is exposed.

Bachynsky at 1353.

release, in the absence of other omissions in the plea colloquy, was only a partial failure to address a core concern. Therefore, the harmless error standard of review was applicable. Id. at 1359-60.

In United States v. Garcia-Garcia, 939 F.2d 230, 231-33 (5th Cir. 1991), and in United States v. Bounds, 943 F.2d 541, 545-46 (5th Cir. 1991), this Court applied Bachynsky's analysis and reversed the convictions where the district court did not mention the possibility or effect of a term of supervised release and the possible period of incarceration of the actual sentence exceeded the statutory maximum of which the defendant was advised.

A recent case adds another facet to this issue. In United States v. Arlen, 947 F.2d 139, 146-47 (5th Cir. 1991), cert. denied, ____ U.S.____, 112 S. Ct. 1480, 117 L. Ed. 2d 623 (1992), the district court explained that any sentence of imprisonment would be followed by three years of supervised release, but did not advise the defendant that he would face additional imprisonment if he violated the terms of supervised release. The defendant claimed that his guilty plea was invalid because the district court failed to advise him fully of the effects of supervised release. This Court, without citing Bachynsky or its analysis, noted that the district court had not totally failed to address the subject of supervised release and thus defendant had to demonstrate that he was prejudiced, i.e., that the district court's failure to explain the effect of supervised release caused him to plead guilty when he would not have otherwise done so.

On its face, Arlen appears to eliminate the condition to the rule adopted in Bachynsky, i.e. application of the harmless error standard is based on ". . . assuming the aggregate maximum period of incarceration under the actual sentence of imprisonment and supervised release cannot exceed the statutory maximum explained to the defendant." The Arlen court did not analyze whether the aggregate time in prison which Arlen could serve, in the event supervised release was revoked, would be less than the statutory maximum. However, Arlen is consistent with Bachynsky in fact, because Arlen's maximum potential period of incarceration was less than the statutory maximum[2] and, therefore, we read Arlen as being consistent with the Bachnysky condition.

The Bachynsky condition is not met in Hekimain's case.

As in Arlen, the court in Hekimain (through the AUSA) mentioned at the plea hearing that Hekimain would be subject to a three year term of supervised release. However, in Hekimain, the AUSA went on to explain the effects of revocation of the supervised release. The explanation, unfortunately, was incorrect.

We will not attempt to analyze what the inaccurate statement by the AUSA may have meant to Hekimain. Rather, we hold that in this case the incorrect statement by the AUSA as to the effect of

---

[2]     At the plea hearing Arlen was advised as to the statutory maximum and that there was a period of supervised release but nothing as to the effect of supervised release.  Arlen was sentenced to twelve months of imprisonment and three years of supervised release on both counts to run consecutively.  The maximum aggregate period of incarceration which Arlen faced under his sentence was three years, i.e. twelve months under 18 U.S.C. § 371; 21 U.S.C. §§ 331(a) and 333(b), and two years upon revocation of supervised release under 18 U.S.C. § 3583(e)(3).  The aggregate period of time that Arlen could have spent in prison, three years, was less than the five years statutory maximum.

10

supervised release was the same as if he had failed to mention it at all.

At the plea hearing, Hekimain was clearly advised as to the five years of imprisonment under the statutory maximum, but because of the incorrect statement of the AUSA he was not correctly advised as to the time of imprisonment which might occur upon revocation of supervised release. Hekimain was sentenced to five years of imprisonment and three years' of supervised release. The maximum aggregate period of incarceration which Hekimain faces under this sentence is seven years, i.e. five years under the statutory maximum of 18 U.S.C. § 1708 and two years upon revocation of supervised release under 18 U.S.C. § 3583(e)(3). Thus, Hekimain's maximum aggregate incarceration time exceeds both the statutory maximum and the amount of incarceration time of which he was correctly advised at the plea hearing. Likewise, under the Bachynsky "worse case" assumption that Hekimain would (1) serve every day of his five year prison term, (2) have his supervised release revoked and be returned to prison on the last day of his supervised release term, and (3) serve every day of his additional two year prison time after revocation of supervised release, the total period of elapsed time between the first day in prison and his last would be 10 years. Bachynsky, 934 F.2d at 1353. As each of these exceeds the five year maximum statutory sentence of which he was correctly advised, Hekimain was prejudiced by the district court's failure to properly describe the effect of supervised release. Garcia-Garcia 939 F.2d at 232, Bounds, 943 F.2d 541.

11

C.  <u>DISTRICT COURTS FAILURE TO INFORM HEKIMAIN THAT IT COULD UPWARDLY DEPART.</u>

Hekimain also contends that his guilty plea should be set aside because the district court failed to inform him that it could upwardly depart from the sentencing guidelines.

Rule 11(c)(1) requires the district court to inform the defendant that it is required to consider any applicable sentencing guidelines but that it may depart from those guidelines under some circumstances.

The transcript of the plea colloquy clearly reflects that Hekimain was informed that his sentence would be computed with reference to a Guidelines "range", and that the district court would select the applicable "range."  There was, however, no mention by the court or, for that matter, any other participant, of the district court's power to effect an upward departure from the applicable Guidelines' range.  We note also that paragraph 4 of the plea agreement, which is the only paragraph of the plea agreement dealing with sentencing,[3] does not mention the power of the court to depart from the guidelines; and by its language clearly infers that the parties were thinking of a sentence within the range fixed by the guidelines.

Hekimain claims that he had no idea that the district court could, under certain circumstances, ignore the Guidelines and

---

[3]    It is understood that the sentence to be imposed upon the defendant is within the sole discretion of the sentencing Judge, subject to the provisions of the Sentencing Reform Act and the sentencing guidelines promulgated thereunder.

Paragraph 4 of Plea Agreement Vol 1

sentence him to a term of imprisonment that was four times the magnitude of the maximum Guidelines sentence. Absent prior notice, Hekimain claims he had no reason to expect that his guilty plea could result in a sentence of the severity imposed by the district court.

The government counters that the plea colloquy satisfied Rule 11 and that the district court need not use any "magic words" concerning upward departure. A fair reading of the colloquy, it argues, is that, although defense counsel had advised Hekimain of his projection of the minimum and maximum guidelines ranges, the judge made it clear that he would make the final determination of the applicable sentencing guidelines range and what sentence Hekimain would receive. The government argues alternatively that any error is harmless because Hekimain was advised of the maximum statutory sentence, which he received. The court did not specifically tell Hekimain that the court could "depart" from the guidelines range, it argues, but the court did specifically inform Hekimain that a guideline range would be calculated by the probation department. Furthermore, it claims, the court informed Hekimain that the calculation could be higher than he thought it would be, that the court would make the final determination of what the guideline range would be, and the court would determine what sentence he would receive. The government argues that this language satisfies Rule 11(c)(1).

No Fifth Circuit case has previously addressed whether the colloquy regarding guidelines in this case complies with Rule 11,

13

and if not, what effect this has on the validity of Hekimain's guilty plea.  In <u>Bachynsky</u>, this Court noted that supervised release was the only error alleged by the defendant and left open the question of the effect other omissions in the plea colloquy would have on its analysis.  See <u>Bachynsky</u>, 934 F.2d at 1360.

Rule 11 clearly requires that the district court inform the defendant that the court is "obligated to consider any applicable sentencing Guidelines <u>but may depart from the Guidelines under specified circumstances</u>" (emphasis added) as one component of the "maximum penalty element" of a "core interest" protected by the colloquy mandated by Rule 11. In <u>Bachynsky</u>, 934 F.2d 1349 at 1356 this court recognized that the defendant must understand the consequences of his guilty plea as the "core interest" protected by, inter alia, the mandatory explanation of the district court's power to effect an upward departure.

From our review of the transcript of the plea hearing, it is clear that the district court did not advise Hekimain that the district court could, under certain circumstances, sentence him to a term of imprisonment that exceeded the maximum Guidelines range.[4]

_____

[4]The Court:  Have you discussed with your client guideline sentencing?

Mr. Mills:  We have, sir.

The Court:  And you've made a calculation.

Mr. Mills:  We have basically a low range and a high range, Your Honor.

The Court:  Okay.  Could you just give me those so I can use those as an example.

Mr. Mills:  The low range we calculated would be zero to six months, Your Honor.

The Court:  And the high range?

Mr. Mills:  The high range would be fifteen to twenty-one months.

a:jm1:91-1832:opn:
 4/27/4/4:18pm

14

We hold that such failure is another partial failure to address the core concern of making sure that a defendant understands the consequences of his plea. By itself, this failure

---

The Court: Okay. Mr. Mills -- I'm sorry. Mr. Mills, has your client understood what you've told him about the guideline ranges that you've just given me?

Mr. Mills: Yes, sir, I believe he has.

The Court: And does he understand that you have no way of knowing whether that will be the guideline range calculated by the Probation Department and accepted by me?

Mr. Mills: Yes, sir.

The Court: Now, do you generally understand what your lawyers have told about guideline sentencing?

The Defendant Hekimain: Yes, sir, I do.

The Court: You heard Mr. Mills tell me that one calculation that he's made on your behalf would show zero to six months and a higher one would show fifteen to twenty-one months?

The Defendant Hekimain: Yes, sir.

The Court: Do you understand again there's no way for him to know or me to know right now that either one of the calculations is correct?

The Defendant Hekimain: Yes, sir.

The Court: You do understand that our Probation Department will do a calculation for me?

The Defendant Hekimain: Yes, sir.

The Court: Do you understand that if that calculation turns out to be higher than you may think, or Mr. Mills may think, you would not have a right to withdraw your plea of guilty?

The Defendant Hekimain: Correct, sir.

The Court: You do understand that if your attorneys thought the calculation was wrong they could make objections to me and say it's wrong?

The Defendant Hekimain: Yes, Your Honor.

The Court: Okay. You understand I am the one who would rule on any objections as to whether the calculation of the guideline was correct or not?

The Defendant Hekimain: Yes, sir.

The Court: So you understand that I am the one who would make the final determination of what your guideline ranges will be and what sentence you will receive?

The Defendant Hekimain: Yes, sir.

TR. Vol 2 - p. 9, line 11 to p. 11, line 13

a:jm1:91-1832:opn:
 4/27/4/4:18pm

15

might not necessitate vacation of the sentence; but when it occurs, as in this case, with another partial failure in the same core concern, and the <u>Bachynsky</u> condition for application of harmless error analysis is not met, we have no hesitancy in holding that such error is not harmless and affects the Defendant's substantial rights.

Hekimain's plea was thus not voluntary, and the strictures of the due process clause as to this point were not satisfied. <u>United States v. Pearson</u>, 910 F.2d 221 (5th Cir. 1990) <u>cert denied</u> ___ U.S. ____, 111 S. Ct. 977, 112 L. Ed. 2d 1062 (1991).

## IV. <u>CONCLUSION</u>

For the foregoing reasons we hold (1) that the district court did not err in connection with Rule 11(c)(1)'s requirement that it inform the defendant <u>personally</u> of the maximum penalty; but (2) that the partial failures to comply with the requirements of Federal Rule of Criminal Procedure 11 (c)(1) were not harmless in this case; and accordingly, we REVERSE the conviction, VACATE the sentence, and REMAND their case to the district court to permit defendant to plead anew.

a:jm1:91-1832:opn:
 4/27/4/4:18pm