IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-40123
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    versus

ROBERTO FLOREZ-GARCIA,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
L-99-CR-1116-ALL-S
_____

December 13, 2001

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    Roberto Florez-Garcia was indicted on one count of illegal
entry after deportation and subsequent to a conviction for an
aggravated felony under 8 U.S.C. § 1326(b)(2). The case proceeded
to trial, but, at the conclusion of the government's case-in-chief,
Florez-Garcia entered a plea of guilty, without the benefit of a
plea agreement. He was later sentenced to 125 months in prison and
a three-year term of supervised release. On appeal, Florez-Garcia

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

argues that the district court erred in failing to advise him at the plea hearing of the nature of the charges against him, of the district court's power to depart from the Sentencing Guidelines, and of the effect of a term of supervised release. He argues that the errors affected his substantial rights and were not harmless, requiring reversal. We find that the district court erred in failing to advise Florez-Garcia of the nature of the charges against him, and that the error affected his substantial rights.

FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 1999 Florez-Garcia was discovered on a freight train in Texas by agents of the United States Border Patrol. The agents allegedly questioned Florez-Garcia about his citizenship. He responded that he was from Mexico and failed to produce identification documents. Florez-Garcia was arrested as an undocumented alien. Shortly thereafter he stated that he was born in Chihuahua, Mexico, and that he last entered the United States without inspection by wading or swimming across the Rio Grande River near Laredo, Texas.

Records of the Immigration and Naturalization Service reflected that Florez-Garcia had been deported from the United States three times before. In addition, penitentiary packets introduced into evidence at trial indicated that Florez-Garcia had previously been convicted for possession of cocaine and, under aliases on three separate occasions, for burglary of a habitation.

2

As a defense to the indictment for illegal reentry following a conviction for an aggravated felony, Florez-Garcia alleged that he was a United States citizen, born in California. However, he was unable to provide any documentation to support his claim of citizenship, and the government was unable to find any record indicating that he was a citizen.

The case proceeded to trial and, at the close of the government's case, Florez-Garcia pleaded guilty, without the benefit of a plea agreement. The district court conducted the plea hearing on the spot, and, after advising Florez-Garcia of his rights and asking Florez-Garcia whether he had been coerced to plead guilty, the court accepted the plea. Although the indictment was read at the start of the jury trial, during the plea colloquy the district court did not describe the nature of the charges to Florez-Garcia, nor read the indictment to him, nor give him an opportunity to ask questions about the nature of the charges against him. Also, the district court did not inform him of the effect that revocation of supervised release could have on his sentence.

At the sentencing hearing, Florez-Garcia's attorney informed the judge that Florez-Garcia had a problem with the sentencing hearing in its entirety, because he claimed that he had been forced to plead guilty, that his previous attorney had pressured him, and that he thought he was pleading guilty to perjury. In response to questioning by the district court, Florez-Garcia asserted that he

3

was a United States citizen so he could not be pleading guilty to illegal entry; he steadfastly maintained that he had been born in Los Angeles. However, noting that there was no evidence supporting the claim of citizenship, the district court stated: "I think it's a path we've trod many times before. I am, not at this hearing, going to go into issue of guilty [sic] or innocence I think. We have a plea of guilty. I am not..., based on anything I have heard, going to set that aside."

DISCUSSION

I. <u>The district court's failure to advise Florez-Garcia of the nature of the charges against him constitutes reversible error.</u>

Because a guilty plea results in the waiver of several federal constitutional rights, such pleas must be entered intelligently and voluntarily. *Boykin v. Alabama,* 395 U.S. 238, 242-243, 89 S.Ct. 1709, 1712 (1969). Thus, before accepting a guilty plea, the district court must address the defendant in open court and determine that the defendant understands "the nature of the charge to which the plea is offered." Fed. R. Crim. P. 11(c)(1).

Rule 11(c) errors to which the appellant has objected at the district court level are reviewed on appeal under a harmless error standard. *See* Fed. R. Crim. P. 11(h).[1] "Objections and the

---

[1]Harmless error has been the standard of review applied in numerous cases involving Rule 11 errors. However, in a recent case involving an alleged Rule 11(f) error to which the appellant had not objected at the district court, this Court applied a

4

grounds therefor should be made with particularity." *U.S. v. Anderson*, 665 F.2d 649, 660 (5th Cir. 1982). In this case, Florez-Garcia effectively objected to the district court's failure to inform him of the nature of the charges at sentencing, when he stated that he thought he was pleading guilty to perjury. As is obvious from its statements at the sentencing hearing, the district court was aware of the objection, and chose to dismiss it. Thus, on appeal the standard of review is harmless error. And in this case, the appellant and the government are in agreement that the harmless error standard applies.

In the context of Rule 11 violations, harmless error analysis is composed of two questions: "(1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?" *U.S. v. Johnson*, 1 F.3d 296, 298 (5th Cir. 1993) (en banc). A substantial right has been violated if "the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *Id.* at 302.

---

plain error standard. *See U.S. v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc). The United States Supreme Court has granted certiorari to review the question of which standard applies in cases where the appellant failed to object to a Rule 11 error. *See U.S. v. Vonn*, 121 S.Ct. 1185 (2001). This issue, and the question of whether *Marek* applies not only to Rule 11(f) but also to Rule 11(c) errors, need not be addressed in this opinion, as Florez-Garcia objected to the Rule 11(c) error at the sentencing hearing.

The district court in the present case varied from the procedures required by Rule 11(c) in that it did not inform Florez-Garcia of the nature of the charges against him.  It is possible that the district court relied on the fact that the indictment was read at the start of the jury trial, on the same day that the plea colloquy occurred.  Traditionally, to ensure that the defendant understands the nature of the charges against him, this Court has required that the district court personally inform the defendant of the nature of the charges.  *See U.S. v. Shacklett*, 921 F.2d 580, 582-83 (5th Cir. 1991).  On the other hand, "in cases involving simple charges, 'a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice' to inform the defendant of the nature of the charge."  *U.S. v. Cuevas-Andrade*, 232 F.3d 440, 444  (5th Cir. 2000)(quoting *U.S. v. Dayton,* 604 F.2d 931, 938 (5th Cir. 1979) (en banc)).  But in Florez-Garcia's case the district court did not describe the nature of the charges personally, or direct any other person to read the indictment at the time of the plea.

The district court's variance from Rule 11 procedures was not a harmless error.  Here, no plea agreement or factual resume was presented in the Rule 11 colloquy, and the prosecutor did not offer a factual basis to support the plea.  In this case, the reading of the indictment at the start of the jury trial was insufficient to cure the error, as the plea colloquy marked a distinct shift from

6

the jury trial. The defendant could reasonably have believed that his plea addressed different and lesser charges than those made at trial. As is evident from Florez-Garcia's statements at sentencing, he did not understand the nature of the charges to which he was pleading guilty. From his repeated assertions of U.S. citizenship, it appears likely that "knowledge and comprehension of the full and correct information would have... affect[ed] his willingness to plead guilty." *Johnson*, 1 F.3d at 302. Thus, the district court's failure to inform Florez-Garcia of the nature of the charges against him constitutes harmful and, therefore, reversible error.

II. <u>The district court's failure to inform Florez-Garcia of the effect of supervised release constitutes harmless error</u>

During the plea colloquy the district court did not to advise Florez-Garcia of the effect that a term of supervised release could have on his total possible term of incarceration. Thus, the district court varied from the procedures required by Rule 11(c), which provides that "[b]efore accepting a plea of guilty..., the court must address the defendant personally in open court and inform the defendant of... the maximum possible penalty provided by law, including the effect of any... supervised release term." Fed. R. Crim. P. 11(c)(1).

However, this Court has held that, if the maximum term of incarceration under the actual sentence of imprisonment and

7

supervised release is less than the maximum term of incarceration allowed by law and cited by the district court, then the failure to inform the defendant of the effect of supervised release is harmless error. *See Cuevas-Andrade*, 232 F.3d at 444; *U.S. v. Hekimain,* 975 F.2d 1098, 1101-03 (5th Cir.1992). During the plea colloquy Florez-Garcia was informed that the maximum penalty he would face was a term of incarceration of 20 years, a possible fine of $250,000, and a term of supervised release of not more than three years. In fact, he received a lesser penalty of 125 months' imprisonment and a three year term of supervised release. Revocation of supervised release would result in an additional 24 months' imprisonment. *See* 8 U.S.C. § 1326(b)(2), 18 U.S.C. §§ 3559(a)(3), 3583(e)(3). The maximum term of incarceration under the actual sentence was less than the maximum term allowed by law, and of which the defendant was informed during the plea colloquy. Hence, the error was harmless.

III. <u>The district court's failure to inform Florez-Garcia of the court's power to depart from the sentencing guidelines is harmless error</u>.

Rule 11 requires that the district court inform the defendant of "the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances." Fed. R. Crim. P. 11(c)(1). Florez-Garcia

8

contends that the district court did not properly admonish him as to the court's power to depart from the sentencing guidelines.

In fact, the district court did not fully explain either the fact that the court was required to consider the guidelines, or that the court could depart from them in sentencing.[2] The district court's statements during the plea colloquy did not refer to the ranges provided for in the guidelines; instead the court only pointed out that, although several factors were usually taken into account in sentencing, the sentence was at the judge's discretion. Thus, there was a variance from the procedures required by Rule 11. However, the court's statements should have made Florez-Garcia aware that the judge could sentence him up to the maximum provided for by law. In addition, the district court did not, in fact, depart from the sentencing guidelines in deciding Florez-Garcia's sentence. Hence, the court's failure to explain the court's power to depart from the sentencing guidelines is harmless. *See Cuevas-Andrade*, 232 F.3d at 445; *Hekimain,* 975 F.2d at 1103-04 (5th Cir.1992).

Florez-Garcia does not deny that the district court's failures to explain the effect of revocation of supervised release and the

---

[2]The district court stated that "under the so-called sentencing guidelines, ... the Court sentences you on the basis of a number of factors, including the crime to which you plead guilty, your prior criminal record, information you provided the probation office.... But... in the end, the decision as to sentence is the Court's to make."

court's power to depart from the sentencing guidelines, standing alone, were harmless. However, he argues that when combined with the court's failure to inform him of the nature of the charges against him, these errors affected his substantial rights. As stated earlier, the district court's failure to inform Florez-Garcia of the nature of the charges against him constitutes harmful error in this case because it is likely that, had he understood the nature of these charges, Florez-Garcia would not have pleaded guilty. But it appears unlikely that, had he understood the effect of revocation of supervised release and the mechanics of sentencing, Florez-Garcia would have changed his mind about pleading guilty; that decision was apparently driven by the fact that he thought he was pleading guilty to perjury, a lesser charge than that for which he was being tried. Consequently, even considered in light of the district court's failure to describe the nature of the charges, the failure to explain the effect of revocation of supervised release and to explain the court's power to depart from the sentencing guidelines was harmless error. Thus the only error that affected Florez-Garcia's substantial rights is the court's failure to explain the nature of the charges against him.

CONCLUSION

Although the district court committed several Rule 11 errors when taking Florez-Garcia's plea, only one of these errors is

reversible.  We know that in courts that are especially busy there is always the temptation to cut corners.  But still, words from the Seventh Circuit are applicable to appeals such as this one: "[c]ompliance with Rule 11 is easily achieved.  Both judge and prosecutor can use check-off forms (which are readily available); it is surprising and regrettable that the court continues to see appeals of this kind, where a district judge, a prosecutor, and defense counsel all seem oblivious to the risk."  *U.S. v. Driver*, 242 F.3d 767, 769 (7th Cir. 2001).

For the aforementioned reasons, Florez-Garcia's conviction and judgment are hereby VACATED and the case REMANDED to the district court with instructions that Florez-Garcia be allowed to withdraw his guilty plea.