Revised August 17, 1998

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-20264
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CRAIG MICHAEL COSCARELLI, also known as
John Coscarelli,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

July 30, 1998

Before POLITZ, Chief Judge, REYNALDO G. GARZA, KING, JOLLY,
HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHE, WIENER, BARKSDALE, EMILIO
M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit
Judges.

EDITH H. JONES, Circuit Judge:

The United States alone appealed from a sentencing

decision by the district court that did not correctly apply the

guidelines for money-laundering in this telemarketing scam

prosecution. The panel opinion sustained the government's

position.[1]  What concerned the en banc court, however, was the panel majority's further decision to grant affirmative relief to appellee Coscarelli  -- who waived his right to appeal in writing, filed no notice of appeal or cross-appeal, and never made any request for relief from his conviction or sentence -- by vacating the guilty plea entirely.  As an en banc court, we hold that Coscarelli's failure to file a notice of appeal precludes him from receiving affirmative relief in this court.  We have no jurisdiction over any such claim.

The first sentence of Federal Rule of Appellate Procedure 4(b) says, "[i]n a criminal case, a defendant shall file a notice of appeal in the district court within 10 days after the entry either of the judgment or order appealed from, or of a notice of appeal by the Government."  The Supreme Court has described the ten-day limit for filing a notice of appeal in a criminal case as "mandatory and jurisdictional."  United States v. Robinson, 361 U.S. 220, 229, 80 S.Ct. 282, 288 (1960) (interpreting language in a predecessor to the current rule).  See also United States v. Adams, 106 F.3d 646, 647 (5th Cir. 1997) ("This court cannot exercise jurisdiction absent a timely notice of appeal.")  The wording of the rule which requires the notice of appeal to be filed within ten days is as applicable to a defendant's cross-appeal as it is when the government does not appeal.  Coscarelli filed no

---

[1]  On rehearing, we reinstate that portion of the opinion.

notice of appeal or cross-appeal from the district court's sentencing decision.[2]  In a case such as this, an appellate court simply has no authority to grant Coscarelli relief that would expand his rights under the judgment.

Coscarelli's brief to the en banc court concedes this point, stating:

> Even though there are arguments supporting jurisdiction, counsel's additional research on this issue indicates that the court does not have jurisdiction.

En Banc brief at 3.[3]

Although Coscarelli does not make any such argument, the dissent may contend that our recent en banc decision in Marts v. Hines, 117 F.3d 1504 (5th Cir. 1997), either permits or requires us to exercise discretionary appellate jurisdiction notwithstanding

---

[2]  Coscarelli's brief explains this decision as follows:

> In fact, Mr. Coscarelli elected to accept Judge Gilmore's sentence as appropriate punishment for his conduct, and filed, upon the advice of the undersigned counsel, a waiver of right of appeal document on February 7, 1996 (1 R. 261).  This was done as a matter of strategy to force the government to either appeal or accept the sentence as final.

[3]  To support his point Coscarelli correctly relies on Stockstill v. Petty Ray Geophysical, 888 F.2d 1493 (5th Cir. 1989), which in turn relies upon a United States Supreme Court case, Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988).  In the Torres case, the Court held that the requirements of Rules 3 and 4 are mandatory and jurisdictional and that although the courts of appeals may liberally construe those rules to determine whether compliance exists, the courts may not waive noncompliance.  See id. at 317, 108 S.Ct. at 2409.

3

Coscarelli's failure to file a notice of appeal. This interpretation of <u>Marts</u> would be pure wishful thinking and would flatly contradict the narrow application of <u>Marts</u> to <u>in forma pauperis</u> cases brought under a statute now superseded by the Prison Litigation Reform Act. In <u>Marts</u>, the question was whether an appellate court could <u>sua sponte</u> determine that dismissals of such cases are deemed to be with prejudice unless the district court expressly declares otherwise. <u>Marts</u> represented an effort "to continue our development of procedures to address and dispose appropriately of a continually burgeoning prisoner <u>pro se</u> docket, both at the trial and appellate levels . . . ." <u>Id.</u> at 1504. <u>Marts</u> concludes that:

> [I]n cases involving dismissals as frivolous or malicious under the <u>in forma pauperis</u> statute in which the defendant has not been served and was, therefore, not before the trial court and is not before the appellate court, the appellate court, notwithstanding, has the authority to change a district court judgment dismissing the claims without prejudice to one dismissing with prejudice, even though there is no cross-appeal by the obviously non-present "appellee."

<u>Id.</u> at 1506. <u>Marts</u> either stands or falls on the sole rationale that when federal courts finally adjudicate <u>in forma pauperis</u> litigation their judgments may protect the courts from an onslaught of malicious and frivolous complaints, where the defendants have neither been served with process nor ever appeared in the case.

Not all who join this majority opinion concurred in <u>Marts</u>, but we share a common view of that opinion's limited

4

holding.  <u>Marts</u> accordingly furnishes no basis for a conclusion that appellate jurisdiction exists here to grant relief to Coscarelli.

For the foregoing reasons, based on the partial reinstatement of the panel opinion, Coscarelli's guilty plea remains unassailed, but the case is <u>VACATED</u> and <u>REMANDED</u> for resentencing and further proceedings consistent herewith.

ENDRECORD

DeMOSS, Circuit Judge, joined by REYNALDO G. GARZA, Senior Circuit Judge, dissenting.

This case has been snake-bit from the time the indictment was filed. Virtually no stage of the proceeding was conducted without some form of error. I write not because I am confident that it will make any difference with respect to the substantive outcome on appeal, but because I want to exhort the district court, which is likely to become the court of last resort for real justice in this case, to untangle the web of error that our Court has today so deftly avoided.

I write also because the majority sets forth, in unremarkable fashion and as if it had been the law all along, the very remarkable proposition that Coscarelli's failure to file a cross-appeal from an essentially favorable judgment destroys this Court's power to remedy error of constitutional magnitude. Because I believe that result is inconsistent with controlling authority, which goes unmentioned in the majority opinion, I am forced to register my dissent.

## I.
## AN INTRODUCTION

Craig Coscarelli was charged in an eleven count indictment. Counts two through eleven charged substantive counts of wire fraud and mail fraud. The indictment did not contain any count alleging a substantive money laundering offense. Count 1, which is the

source of the constitutional error in this case, charged one of those long, complicated and multi-headed hydras that prosecutors love to fashion -- the multiple object conspiracy. Coscarelli decided to enter a guilty plea. At Coscarelli's Rule 11 hearing the district court, apparently misled by ambiguity in the indictment, erroneously understated the statutory maximum term of imprisonment by fifteen years, omitted any mention of the money laundering object when characterizing the offense charged in count 1, and then failed to require the government to establish any factual basis whatsoever for the money laundering object charged in that count. Coscarelli's first appointed counsel resigned shortly thereafter.

Notwithstanding the conspicuous absence of the money laundering object in the Rule 11 colloquy, that object showed up in the presentence report as the pivotal factor establishing Coscarelli's considerable sentence. Coscarelli (now represented by his third appointed counsel) filed objections, stating that he never intended to commit money laundering. The district court, being persuaded by Coscarelli's argument, simply omitted the money laundering object from Coscarelli's sentence calculation.

The government appealed, asserting Coscarelli's guilty plea to the money laundering object as the basis for its argument that Coscarelli should receive a harsher sentence than the one imposed. The government contended that Coscarelli pleaded "guilty as charged," directing our Court to the indictment and portions of the

7

Rule 11 hearing. Coscarelli, who thought he won below, did not cross-appeal, but argued that the Rule 11 hearing and his subsequent objections to the presentence report established that he did not intend to plead guilty to conspiracy to commit money laundering.

The panel held that the government's sentencing point was correct. Assuming a validly entered guilty plea as to the money laundering object of the multiple object conspiracy, Coscarelli's base offense level would correctly be determined using the money laundering guideline. The panel examined the Rule 11 transcript to locate the plea that was inextricably intertwined with and essential to the government's appeal. An examination of the Rule 11 transcript did not reveal, however, the pristine guilty plea described by the government. To the contrary, the Rule 11 hearing, and therefore the plea upon which the government sought to rely, was contaminated with plain and harmful error of constitutional magnitude.

## II.
## RULE 11 ERROR AND OTHER FOLLIES

In the panel opinion, we developed only what we considered to be the most egregious violation of Coscarelli's rights, the district court's erroneous rendition of Coscarelli's possible maximum statutory sentence at the plea hearing. Rule 11 requires that the district court personally inform Coscarelli concerning the

8

"maximum possible penalty provided by law." FED. R. CRIM. P. 11(c)(1) & (g). Coscarelli was not told that the law provided a maximum sentence of twenty years with respect to count 1. To the contrary, Coscarelli was affirmatively misinformed that the maximum possible penalty with respect to count 1 was five years. That such error is of constitutional dimension under our existing precedent cannot be denied.[4]

Of perhaps equal importance, however, is the district court's erroneous statement of the charge against Coscarelli.[5] Rule 11 requires a record showing that the district court personally informed Coscarelli concerning the "nature of the charge to which the plea is offered." FED. R. CRIM. P. 11(c)(1) & (g). The district court informed Coscarelli that count 1 charged conspiracy to commit "mail fraud or wire fraud," thereby omitting both the use of a fictitious name object and the money laundering object of the

---

[4] *See, e.g., **Brady v. United States***, 90 S. Ct. 1463, 1469 (1970) (a plea made without "sufficient awareness of the relevant circumstances and likely consequences" is not intelligently made); ***United States v. Guerra***, 94 F.3d 989, 994 (5th Cir. 1996) ("A plea of guilty must, as a matter of due process, be a voluntary, knowing, and intelligent act."); ***United States v. Rivera***, 898 F.2d 442, 447 (5th Cir. 1990) ("The Constitution requires that a defendant be advised and understand the consequences of a guilty plea.").

[5] ***United States v. Bernal***, 861 F.2d 434, 435 (5th Cir. 1988) (reversing conviction because the defendant must understand the nature of the charge); ***United States v. Corbett***, 742 F.2d 173, 178 & n.12 (5th Cir. 1984) (vacating plea because failure to require disclosure of the nature of the charge was plain error that affected the "fairness, integrity or public reputation" of the judicial proceedings).

conspiracy charged in count 1.  An affirmative misstatement of the charge, as in this case, is much more likely to have affected the defendant's decision, and therefore, to be harmful.  ***United States v. Whyte***, 3 F.3d 129, 130-31 (5th Cir. 1993).  Coscarelli's subsequent objections in the district court and his argument on appeal in this Court both establish that he failed to comprehend the objects of the conspiracy alleged in count 1.

Rule 11 also provides that, when a plea agreement has been reached, the district court must require disclosure of that agreement for the record.  *See* FED. R. CRIM. P. 11(e)(2) - (4).  The record states that there was a plea agreement reached by Coscarelli and the government.  Although the district court established the existence of the plea agreement, it did not, as required by Rule 11, go on to require disclosure of the agreement.  FED. R. CRIM. P. 11(d) & (e)(2); *see also* ***Santobello v. New York***, 92 S. Ct. 495, 498 (1971) ("The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known.").  For obvious reasons, any promises made by the government with respect to count 1 are material to the argument pressed by the government on appeal -- that Coscarelli's plea colloquy supports application of the money laundering guideline.  Nonetheless, meaningful review is not possible because the district court failed in its duty to require disclosure of the terms of the plea agreement for the record.

Finally, Rule 11 requires the district court to establish by inquiry that there is a factual basis for the plea. FED. R. CRIM. P. 11(f). Neither the court nor the prosecutor articulated any facts in the Rule 11 hearing that would support Coscarelli's criminal conviction for conspiracy to commit money laundering. Notwithstanding any confusion about the possible penalty and the nature of the charges (both core concerns of Rule 11), the district court might have avoided error if it had performed its Rule 11(f) duty to independently ascertain the existence of a factual basis for each object charged. Coscarelli's plea should not have been accepted without the district court's inquiry into the facts supporting each of the objects of the conspiracy described in count 1.

In sum, Coscarelli was affirmatively misinformed concerning the maximum possible penalty and the nature of the charge against him. In addition, Coscarelli's plea was not supported by any (let alone a sufficient) factual basis with respect to the money laundering object of the conspiracy charged in count 1. In the following section, I will discuss what I believe may be the cause of such plain error and what I believe to be this Court's obligation to properly advise the district courts on how to avoid such error.

## III.
## AMBIGUITY IN THE INDICTMENT AND JUDGMENT

Multiple object conspiracy counts are an inherently rich source of ambiguity that often result in post-conviction challenges to both guilty verdicts and guilty pleas. For example, the multiple object conspiracy charged in this case spanned eight pages, contained seventeen subparagraphs, and named seven other defendants. It is not surprising, therefore, that this record reveals considerable ambiguity concerning the nature of the charges in count 1.

Count 1 charged conspiracy to commit (1) wire fraud, and (2) mail fraud, and (3) use of a fictitious name. These three objects were charged, as indicated, in the conjunctive. Count 1 also charged conspiracy to commit money laundering. The money laundering object was simply appended as a fourth object. The indictment did not include either the conjunctive "and" or the disjunctive "or" with respect to that object. The indictment did not include any substantive money laundering count. Moreover, the indictment did not include any citation to 18 U.S.C. § 1956(h), the statutory provision that criminalizes conspiracy to commit money laundering and provides that the crime is punishable by up to twenty years imprisonment, the same penalty applicable to a substantive money laundering conviction. Instead, count 1 begins and ends with citations to 18 U.S.C. § 371, the generic statutory conspiracy provision, which provides a maximum penalty of only five years imprisonment.

The government's argument that Coscarelli should have been

12

sentenced on the basis of the money laundering guideline places great emphasis on the fact that Coscarelli pleaded to the "indictment." Nonetheless, Coscarelli was not sentenced nor was judgment entered on terms consistent with the indictment. For example, the use-of-a-fictitious-name object is completely omitted from the Rule 11 hearing, the sentencing hearing, and the judgment. In other places, the judgment erroneously reflects the ambiguities created by the indictment. For example, the judgment reflects that the statute applicable to his conviction on count 1 is 18 U.S.C. § 371, the generic conspiracy statute providing a five year maximum term of imprisonment, rather than 18 U.S.C. § 1956(h), the specific statutory provision for conspiracy to commit money laundering.[6]

Neither could the government have simply decided to avoid the effect of § 1956(h) by pleading the case as a § 371 conspiracy. The sentencing guidelines incorporate statutory penalties. *United States v. Watch,* 7 F.3d 422, 428 (5th Cir. 1993).[7] That is why the

_____

[6] The judgment contains other noteworthy errors. For example, the judgment reports that Coscarelli "pleaded guilty to count(s) 1-11 on June 12, 1994." The date of June 12, 1994 was some five months prior to the date on which the indictment in this case was filed in the district clerk's office.

[7] In *Watch* the government and defendant apparently agreed to omit any reference to quantity in an indictment alleging a drug offense. The purpose of the agreement was to avoid application of a statutorily mandated minimum sentence. *7 F.3d at 426.* Although the defendant was correctly apprised of the possible penalties as the charge was framed in the indictment, he was incorrectly advised with respect to the ultimate penalty because the sentencing guidelines incorporated the statutory penalties and required a finding of quantity. Rejecting the district court's finding that

13

base offense level for Coscarelli's fraud offenses was 6, while the presence of the money laundering object in count 1 hiked the base offense level up to 23. *Compare* U.S.S.G. § 2F1.1 *with* § 2S1.1. The district court's failure to include § 1956(h) in the judgment on count 1 takes on added importance in this case because § 1956(h) provides for a twenty year maximum term of imprisonment, which serves as the statutory basis for the money laundering guideline which the government has urged our Court to apply.

## IV.
## ADDITIONAL SOURCES OF ERROR

There are at least two other factors that I believe contributed to the development of error in this case. First, I think that the particularly deplorable quality of Coscarelli's counsel facilitated the denial of his right to make a knowing and intelligent decision to plead guilty. Coscarelli was represented by three different court appointed attorneys between the time he was arrested and the time judgment was entered on his plea. Coscarelli's first lawyer, court appointed counsel number 1 ("CAC1"), was so inattentive and uncommunicative that Coscarelli wrote to the judge asking for help. After a hearing on the issue, counsel was nonetheless allowed to represent Coscarelli during the plea negotiations and at his Rule 11 hearing.

---

Watch understood the consequence of his plea, the court vacated the conviction. ***Id. at 429.***

14

Coscarelli's first lawyer then failed to appear for sentencing. Although counsel managed to appear for the second sentencing date, he announced unprepared. At the second sentencing, CAC1 conceded that he had not served his client well, and that Coscarelli had meritorious sentencing objections which Coscarelli and the lawyer both agreed needed to be filed. CAC1 requested withdrawal and another attorney (who will be referred to as court appointed counsel 2 or CAC2) was appointed at CAC1's suggestion.

Coscarelli's second lawyer never took any action that appears on the docket sheet. Thirty days later, the court appointed another lawyer, CAC3. CAC3, who concedes that he never talked to either of Coscarelli's previous lawyers and that he had no knowledge concerning the circumstances of Coscarelli's Rule 11 plea until after sentencing, filed cursory objections to the PSR promising to develop the arguments in additional objections. Additional objections were never filed, and Coscarelli proceeded to sentencing.

At sentencing, the district court, apparently responding to arguments made by CAC3, sentenced Coscarelli on the basis of the fraud guidelines to the exclusion of the money laundering guideline and the government voiced an objection and intent to appeal. Inexplicably, and notwithstanding the fact that Coscarelli's sentence could be substantially increased on appeal, CAC3 then counseled his client to immediately file a waiver of appeal.

15

Coscarelli's en banc brief defends the decision, arguing that it was intended to "force the government to either appeal or accept the decision as final." Of course, this is nonsense. Coscarelli's waiver did nothing to reduce the government's options. It was an unnecessary and foolish attempt to influence the government's decision to appeal, which is now being heralded by the en banc majority as an excuse to ignore Coscarelli's substantial rights.

Second, while I realize that we have no authority to dictate charging decisions, I think it is patently clear that the government has not hesitated to capitalize on the ambiguity created by the indictment, furthered at the Rule 11 hearing, and ultimately included in the judgment. The prosecutor stood by mutely while the district court mischaracterized the nature of the charge by omitting any mention of the money laundering object. The prosecutor then failed to articulate any facts in support of the money laundering object at the Rule 11 hearing. Nonetheless, once the plea was obtained, the government sought to impose a higher sentence solely on the basis of the money laundering object. Perhaps this was carelessness on all sides, but I do not agree that Coscarelli should pay with his constitutional rights.

Neither is this disparity a novel scenario. For several years, the Sentencing Commission has been studying the disparity resulting from application of the money laundering guideline in

16

multiple object conspiracy cases like Coscarelli's, many of which involve primarily criminal fraud of one form or another.[8]  Although the Commission has reported out several recommended amendments, which would more closely tie the base offense level in the money laundering guideline to the nature of the underlying criminal conduct, Congress has thus far declined to act upon those recommendations.  Consequently, until Congress changes the law, the money laundering guideline remains the proverbial "800 pound gorilla," which overwhelms the relatively puny fraud guideline and produces a sentence that is twice as long as it would have been had the multiple object conspiracy not contained a money laundering object.   While I cannot quarrel with Congress' judgment, I do believe that the disparities caused by Congress' refusal to act upon the Commission's recommendations, together with the inherently ambiguous and ungainly indictments that are generated in such cases, place a more onerous burden on the courts to ensure that guilty pleas to a multiple object conspiracy which include a money laundering object are truly supported by a sufficient factual basis as required by Rule 11.

**V.**

---

[8]    *See, e.g.*, UNITED STATES SENTENCING COMMISSION, REPORT TO THE CONGRESS: SENTENCING POLICY FOR MONEY LAUNDERING OFFENSES, INCLUDING COMMENTS ON DEPARTMENT OF JUSTICE REPORT (Sept. 18, 1997) <http://www.ussc.gov/ moneylau/monilaun.htm>; UNITED STATES SENTENCING COMMISSION, MONEY LAUNDERING WORKING GROUP REPORT (Feb. 28, 1995) <http://www.ussc.gov/ legist.htm/launder[1]>.

17

## THE PANEL'S PROPOSED SOLUTION

Based upon the circumstances described, the panel opinion recognized that Coscarelli's conviction for the money laundering object would justify a significantly higher sentence, but also held that his plea on the money laundering object was not secured in compliance with the principles of Rule 11. Rather than simply deny the government the higher sentence that would be justified by the money laundering object, the panel vacated Coscarelli's conviction and remanded to permit Coscarelli to replead or be tried on that object, which would determine the appropriate sentence.

In addition to affording just relief, the panel opinion attempted to alert district courts to the inherent pitfalls when a money laundering object is included in a multiple count conspiracy. I still believe that was a correct approach, and notwithstanding the en banc majority's holding on the cross-appeal question, the substantive issue of how to deal with these troublesome counts is likely to recur. I hope that the district court bench will therefore take note of the following principles. When a defendant pleads guilty to a multiple object conspiracy, the district court should carefully separate the multiple objects for purposes of the Rule 11 hearing, and treat each object as if it were a separate offense for the purpose of establishing (1) the defendant's understanding of the nature of the charge, (2) the potential consequences of the plea, and (3) the facts supporting the plea.

18

Such an approach comports with the applicable guideline principles. Conspiracy convictions are sentenced using the guideline for the underlying substantive offense. U.S.S.G. § 2X1.1. Multiple object conspiracy convictions are treated as though the defendant was convicted on a separate count for each underlying object. U.S.S.G. § 1B1.2. If our district courts will draw upon the plainly applicable sentencing guidelines by separately addressing each object, we can be sure that the defendants charged with multiple count conspiracies that include a money laundering object are apprised of the unique consequences of their pleas as required by Rule 11 and the Constitution.

This approach is not unprecedented. In *Watch* there was ambiguity created by the parties themselves as to the substance of the charge and the potential penalties. We concluded that a "prudent district judge" should avoid any ambiguity by "simply walk[ing] a defendant through" the potential penalties. 7 F.3d at 429. Had the district court in this case likewise separated out the individual objects of the multiple object conspiracy, and "walked" Coscarelli through the maximum statutory penalties for each of the underlying substantive offenses, Coscarelli would have been advised that there was a money laundering object. Coscarelli would have been advised that conspiracy to commit money laundering was punishable with a maximum sentence of twenty years. Moreover,

19

the district court would have been much more likely, having mentioned the money laundering object and its maximum statutory punishment, to have required a factual basis to support that object. This is why we alerted district courts to potential pitfalls with respect to certain drug convictions in *Watch* and proposed a remedy to prevent Rule 11 error. A similarly straightforward exercise of our supervisory power in this case would go a long way towards disarming artful charging techniques, improving Rule 11 compliance, and reducing subsequent litigation relating the adequacy of Rule 11 pleas to multiple object conspiracy counts.

## VI.
## AVOIDING THE ERROR EN BANC

A majority of the Court voted to take the panel's disposition en banc. While en banc, the case spun off on a tangent that was neither discussed in the majority panel opinion nor covered in the appended dissent. Rather than addressing the acknowledged constitutional error that occurred at Coscarelli's Rule 11 hearing, the majority now holds that the cross-appeal provision embodied in Federal Rule of Appellate Procedure 4(b) sets up a mandatory and jurisdictional requirement, rather than a rule of practice that can be excused in certain narrow circumstances. In their view, therefore, Coscarelli's failure to file a cross-appeal from the district court's judgment, which granted him the relief he

20

requested, deprives this Court of jurisdiction to address anything except the sentencing error raised by the government's appeal.

## VII.
### THE EN BANC DECISION IS CONTRARY TO CONTROLLING AUTHORITY AND COMMON SENSE

The Supreme Court has never held that the cross-appeal requirement is jurisdictional in a criminal case. In fact, the only time the Supreme Court spoke directly to the character of the cross-appeal requirement was in a civil case and it sought to dispel the confusion by clarifying that the requirement is merely a "rule of practice." *See Langnes v. Green*, 51 S. Ct. 243, 246 (1931) ("These decisions simply announce a rule of practice which generally has been followed; but none of them deny the power of the court to review objections urged by respondent, although he has not applied for certiorari, if the court deems there is good reason to do so."). Our Court considered *Langnes* and the effect of subsequent Supreme Court authority on that opinion less than one year ago in *Marts v. Hines*, 117 F.3d 1504 (5th Cir. 1997) (en banc), *cert. denied*, 118 S. Ct. 716 (1998). In that case, a majority of this Court rejected the precise position now embraced by the en banc majority by holding that the cross-appeal requirement is not jurisdictional and may be excused in certain § 1983 cases. That decision was not inadvertent. The various approaches to the cross-appeal requirement were thoroughly debated by the Court. Dire warnings about the dangerously free-wheeling

21

and potentially disastrous effects of the ultimate disposition in *Marts v. Hines* were clearly before the Court in Judge Garwood's lengthy dissent. *Id*. at 1506-19 (Garwood, J., dissenting).[9]

The majority now holds that *Marts v. Hines* can be distinguished. I disagree. The majority seems to suggest that the Court's decision in *Marts v. Hines* established only a very narrow and necessary exception to the general rule that the cross-appeal requirement is jurisdictional. I always thought jurisdiction, like pregnancy, was an all-or-nothing proposition. We cannot simply decide we have jurisdiction because some of our Court are more troubled by the "burgeoning prisoner pro se docket" discussed in *Marts v. Hines*, id. at 1504, than they are by the unconstitutional guilty plea here in *Coscarelli*. There is no principled way for us to adhere to our disposition excusing the cross-appeal requirement in *Marts v. Hines*, while finding that it is jurisdictional here in

---

[9] The *Marts v. Hines* dissenters (and presumably the majority here, although the opinion itself is silent with respect to supporting authority) relied heavily upon *Morley Constr. Co. v. Maryland Cas. Co.*, 57 S. Ct. 325 (1937). *Morley* makes a reference in the opening sentence of the opinion to the "power" of the Court to modify a decree in the absence of a cross-appeal. *Id.* at 326. The *Marts v. Hines* dissenters argued that *Morley*'s fleeting and solitary use of the word "power" created an "inveterate and certain" rule that the cross-appeal requirement is jurisdictional, which supplanted *Langnes*' expressly reasoned holding that the cross-appeal requirement is merely a rule of practice. My colleagues failed to mention, however, that the relevant portion of *Langnes* makes no direct attempt to characterize the cross-appeal requirement, as well as the fact that *Morley* cited *Langnes* as one source establishing the "inveterate and certain" qualities of the rule there discussed.

*Coscarelli*. I fail to understand how we can reconcile the Court's uncompromising holding that the cross-appeal requirement is jurisdictional with our previous holding that we can nonetheless ignore the absence of a cross-appeal for "prudential" reasons, such as the burgeoning prisoner docket, when we really need to. *See **id***. at 1506 ("This limited exception is the product of our effort to make effective the prudential rule announced herein.").

Nor has the majority explained how we will deal with this Court's prior precedent, which, clearly in civil and criminal cases, has recognized the rule of practice approach articulated by the Supreme Court in *Langnes*. *E.g.*, ***American States Ins. Co. v. Nethery***, 79 F.3d 473, 478 (5th Cir. 1996) ("Unfortunately, the franchisor did not file a notice of cross-appeal and has not shown why its failure to do so should be excused."); ***Shipp v. General Motors Corp.***, 750 F.2d 418, 428 n.12 (5th Cir. 1985) ("The fact that plaintiff's counsel had commitments in another trial is not an exceptional circumstance[] producing great inequity of the extra-ordinary nature that on rare occasions has induced a reviewing court to afford relief to appellees who did not file a cross-appeal." (internal quotations and alterations omitted)); ***French v. Estelle***, 696 F.2d 318, 320 (5th Cir. 1982) (refusing to ignore clear violation of criminal defendant's constitutional rights and holding that the failure to file a cross-appeal did not preclude review of the constitutional claim). Instead, the

23

dramatic about face embraced by the majority is supported with the indisputable but immaterial axiom that an *initial* notice of appeal is both mandatory and jurisdictional, and the fact that the printed rule does not distinguish between an appeal and a cross-appeal. Besides those two points, the majority's conviction that we have no jurisdiction is supported only by the parties' concession that this is so.

While I recognize that stare decisis is not an "inexorable command," I believe there are some very good and justifiable reasons for adhering to our prior determination of this issue in *Marts v. Hines*. When we abandon our own precedent, we convey the message that our prior ruling was in error. *Planned Parenthood v. Casey*, 112 S. Ct. 2791, 2815 (1992). Frequent reconsideration of difficult issues may tax public confidence in the Court's good faith and discourage respect for the binding effect of existing precedent. *Id*. As stated by the Supreme Court:

> There is a limit to the amount of error that can plausibly be imputed to prior Courts. If that limit should be exceeded, disturbance of prior rulings would be taken as evidence that justifiable reexamination of principle had given way to drives for particular results in the short term. The legitimacy of the Court would fade with the frequency of its vacillation.

*Id*. In addition, there are no prudential or pragmatic reasons to overrule our prior precedent in *Marts v. Hines*. The Supreme Court has articulated a number of factors that should inform the decision to overrule prior precedent. Those factors include (1) "whether

24

related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine," and (2) "whether the rule has proven to be intolerable simply in defying practical workability." *Id*. at 2808.

Neither of those two factors suggest a need for reconsideration of **Marts v. Hines**. Whether the cross-appeal requirement may be excused in an appropriate case continues to generate a conflict both between and within our sister circuits. *Compare, e.g.*, **International Ore & Fertilizer Corp. v. SGS Control Servs., Inc.**, 38 F.3d 1279 (2d Cir. 1994) *and* **EF Operating Corp. v. American Bldgs.**, 993 F.2d 1046 (3d Cir. 1993) *with* **Texport Oil Co. v. M/V Amolyntos**, 11 F.3d 361 (2d Cir. 1993) *and* **Reich v. Occupational Safety & Health Review Comm'n**, 998 F.2d 134 (3d Cir. 1993). Surely there can be no argument that our interpretation of the conflicting precedent less than one year ago is now so outdated that the judgment of the Court is a mere "remnant of an abandoned doctrine." Similarly, there is absolutely no indication that our **Marts v. Hines** rule is unworkable. To the contrary, allowing ourselves the flexibility to excuse the cross-appeal requirement when justice so requires has proven to work quite well. *See, e.g.*, **French**, 696 F.2d at 320 (the Court has authority to consider an issue neither raised in the district court nor on appeal, and in the absence of a cross-appeal, when failure to do so will result in a miscarriage of justice or a violation of the

25

Court's duty to apply to correct law); ***United States v. U.S. Steel Corp.***, 520 F.2d 1043, 1052 (5th Cir. 1975) ("If we assume, somewhat skeptically, that formal notice of cross-appeal is necessary to bring this class action order forward, we would hold nonetheless that the circumstances of this case are sufficient to bring the order within the principle that the rules themselves ought not be allowed to subvert the just result which 28 U.S.C. § 2106 obliges every appellate court to reach in cases lawfully brought before it for review." (internal quotations omitted)); *see also **Swarb v. Lennox***, 92 S. Ct. 767, 773 (1972) (White, J., concurring) ("the Court may notice a plain error in the record that disposes of a judgment before it"). There is no justification for abandoning our recent en banc precedent in ***Marts v. Hines***. At the very least, we should not summarily change the rule without expressly saying to the bench and bar that prior precedent is being overruled and that a new bright-line rule will take its place.

The jurisdictional approach, on the other hand, will interject unnecessary rigidity and complexity into many cases and prove a substantial impediment to our review in many more. We will undoubtedly face cases where, as here, the appropriate relief to one party (in this case the government) depends upon whether the Court is empowered to afford relief to another party who failed to appeal (in this case Coscarelli). We will be obligated to limit our review, not only by the scope of the notice of appeal and

briefing on appeal, but also the scope of the cross-appeal.  If things are complex now, they will become hopelessly complex once we are required to run all arguments and potential remedies through that jurisdictional strainer.  And what will we pull up in the net?  Only those unfortunate souls whom justice requires we accommodate, but our newly crafted rule excludes.

Finally, I note that I have been unable to find any cases which use the cross-appeal requirement as a sword to deny a criminal defendant his constitutional rights.  Indeed, the cross-appeal requirement has typically been discussed in civil cases involving multiple defendants.  The power of government to deprive a citizen of his liberty as punishment for criminal conduct is the most awesome power exercised by government.  Under our constitutional system we have established a variety of restraints on that power: due process, presumption of innocence, right to jury trial, requirement of proof beyond reasonable doubt, representation by counsel, and appellate review.  In my view, full and complete compliance with the requirements of Rule 11 is absolutely essential because the act of pleading guilty to criminal conduct necessarily involves the waiver of at least some of these important constitutional rights.  The majority opinion simply ignores the unique considerations applicable to criminal appeals.


**CONCLUSION**


27

Even though the government timely invoked the appellate jurisdiction of this Court by filing a notice of appeal; even though the government's argument is inextricably intertwined with the validity of Coscarelli's plea; even though the government brought forward as part of the appellate record the complete transcript of the Rule 11 hearing in this case and urged this Court to review that record; even though the errors, omissions and inadequacies of the Rule 11 hearing are plain and obvious on the face of the record; and even though the United States Supreme Court has never held that the failure of a criminal defendant to file a cross-appeal deprives the appellate court of the jurisdiction to address plain constitutional error; nevertheless, and in spite of these circumstances, this Court sitting en banc has determined that the ends of justice would be better served if our appellate jurisdiction is confined to only those matters as to which each party has expressly sought relief by filing an independent notice of cross-appeal. My understanding of the rationale behind this decision is that we must not have "rogue judges" wandering through the records seeking grounds of error. As commendable as that philosophy may be in the abstract, in this case it elevates form over substance and gives determinative effect to preventing imaginary misconduct in the future rather than addressing the reality of error in the case before us.

I would adhere to our considered judgment in **_Marts v. Hines_**

28

that the cross-appeal requirement can be excused when compelling circumstances so require. I would further hold that the constitutional errors infecting Coscarelli's plea to the money laundering object made the basis of the government's appeal are sufficient to justify excusing the cross-appeal requirement in this case. Finally, I would reinstate the original panel's holding in this case, which would require imposition of the money laundering guideline on remand if and only if a valid conviction, free from constitutional defect, was entered as to that object on remand. Recognizing that the majority has chosen another path, I conclude with the hope that the district court, which can remedy the constitutional error we find we lack jurisdiction to review, will entertain an appropriately phrased motion to vacate the guilty plea and take whatever steps are required to ensure that any subsequent guilty plea which Coscarelli makes will comport in all respects with the mandates of Rule 11. Such a course will not only work substantial justice, but may well render the prosecution of further appeals and collateral attacks unnecessary. That is, after all, what the panel majority tried to do more than one year ago in the panel opinion.

I respectfully dissent.